UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MYOUNG SU PARK, *on behalf of himself and*
*a collective of similarly situated individuals*,

                                    Plaintiff,                                                **REPORT AND**
                                                                                              **RECOMMENDATION**
                                                                                              24 CV 7437 (DG) (CLP)
                    -against-

KHIMS MARKET INC., *et al.*,

                                    Defendants.

-----------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

On October 24, 2024, plaintiff Myoung Su Park commenced this action, on behalf of

himself and others similarly situated, against defendants Khims Market Inc, d/b/a Khim's

Millenium Market ("KMM"), The Mileu Market Inc, d/b/a Mileu Market ("MM") (collectively,

the "corporate defendants"), and Sang Kyu Khim (the "individual defendant"), alleging

violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), and New

York Labor Law §§ 190 *et seq*., §§ 650 *et seq.* (the "NYLL").  (Compl.[1]).

On November 12, 2024, plaintiff served individual defendant Sang Kyu Khim by leaving

the summons and Complaint at Mr. Khim's residence with Heung Khim, who confirmed she

resided with Mr. Khim, and mailing a copy to his last known address.  (ECF No. 6).  Defendant

Khim failed to answer or otherwise respond to the Complaint, and on December 17, 2024,

plaintiff requested a Certificate of Default to be entered against individual defendant Khim.

(ECF No. 7).  On December 19, 2024, the Clerk entered default as to individual defendant Khim.

(ECF No. 8).

---

[1] Citations to "Compl." refer to plaintiff's Complaint filed October 24, 2024 (ECF No. 1).

In a January 14, 2025 status report to the court, plaintiff indicated that he had been unable to serve the corporate defendants, as their business locations are permanently closed.  (ECF No. 9).  On February 21, 2025, plaintiff moved for default judgment against individual defendant Khim only (the "Motion").  (ECF No. 10).

On February 25, 2025, the Honorable Diane Gujarati, United States District Judge, referred the Motion for Default Judgment to the undersigned for a Report and Recommendation. (Electronic Order, dated 2/25/2025).  On June 13, 2025, this Court set an Inquest Hearing for July 15, 2025, which was adjourned until July 21, 2025 upon plaintiff's request.  (ECF Nos. 13, 15).  On July 18, 2025, plaintiff requested a further adjournment of the July 21, 2025 Inquest Hearing, explaining that plaintiff would be in South Korea until the end of August.  (ECF No. 17).  On July 18, 2025, the Court adjourned the Inquest Hearing *sine die*, noting that in light of plaintiff's unavailability, the Court had reviewed the Motion and attached papers and concluded that the Inquest Hearing was not necessary.  (Electronic Order, dated 7/18/2025).

For the reasons set forth below, the Court respectfully recommends that the motion for default judgment be granted, and that plaintiff Khim be awarded (1) $224,000 in damages and (2) $4,781.42 in counsel fees and costs, for a total of $228,781.42, plus (3) $27.62 per day in prejudgment interest, starting on September 5, 2023, until final judgment is entered, and (4) post-judgment interest until the judgment is paid in full.

## FACTUAL BACKGROUND

According to the Complaint, defendants KMM and MM are domestic corporations doing business in Brooklyn, New York.  (Compl. ¶¶ 6, 7).  Defendant Sang Kyu Khim, who resides in New York, is alleged to be the owner of KMM and MM and exercises control over KMM and MM's day-to-day operations, including how employees are paid.  (Id. ¶¶ 11, 12, 13).

Plaintiff alleges that beginning in September 10, 2022 until his employment ended on August 30, 2024, he was employed by defendants as a sushi chef at KMM, a grocery store. (Id. ¶ 5). According to plaintiff, he worked six days a week from 6:00 a.m. until 4:00 p.m. daily. (Id. ¶ 10). He alleges that he was paid $1,440 per week when working six days a week and $1,200 per week when he worked five days a week. (Id. ¶ 12). Plaintiff alleges that despite working more than sixty (60) hours a week on a regular basis, he was never paid time and a half in overtime pay for hours worked more than forty (40) in a week. (Id. ¶ 14). In addition, plaintiff alleges that from April 20, 2024 until August 30, 2024, defendants failed to pay plaintiff any wages at all. (Id. ¶ 13).

Plaintiff also alleges that defendants failed to provide him with wage notices or wage statements such as pay stubs that included information as to hours worked, the applicable hourly rate, the overtime rate, and tax withholdings. (Id. ¶¶ 16, 17).

In addition to alleging collective action claims on behalf of other similarly situated employees, plaintiff's Complaint contains claims of failure to pay minimum wages, in violation of the FLSA and NYLL (Counts One and Three), failure to pay overtime wages, in violation of the FLSA and NYLL (Counts Two and Four), claims of wage notice and wage statement violations, in violation of NYLL §§ 195(1) and (3) (Counts Five and Six), and failure to provide paid sick leave, in violation of NYLL § 196-b (Count Seven). (Id.)

## DISCUSSION

I.    Legal Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See id.; Fed R. Civ. P. 55(a) (providing that "[w]hen a party

against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

The Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981); see also Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 127 v. Frank Torrone & Sons, Inc., No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018), adopting report and recommendation, 2018 WL 6161655 (E.D.N.Y. Sept. 4, 2018). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party. Id. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: (1) whether the claims were adequately pleaded in the complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the

pleadings"); <u>King v. STL Consulting LLC</u>, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); (2) "whether the grounds for default are clearly established," <u>Jeremiah v. 5 Towns Jewish Times, Inc.</u>, No. 22 CV 5942, 2023 WL 6593997, at *2 (E.D.N.Y. Aug. 9, 2023) (quoting <u>Hirsch v. Innovation Int'l, Inc.</u>, No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992)); and (3) the amount of money potentially involved – "the more money involved, the less justification for entering the default judgment." <u>Id.</u> Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant[s]." <u>Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd.</u>, 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The burden is on the plaintiff to establish his entitlement to recovery. <u>See</u> <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992), <u>cert. denied</u>, 506 U.S. 1080 (1993). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages. <u>Id.</u> Thus, the plaintiff must first establish the defendant's liability as a matter of law, for a defaulting defendant is not considered to have admitted to any legal conclusions. <u>Advanced Capital Commercial Grp., Inc. v. Suarez</u>, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y. Sept. 20, 2013). It remains the plaintiff's burden to demonstrate that the uncontroverted facts establish the defendant's liability on each cause of action asserted. <u>Finkel v. Romanowicz</u>, 577 F.3d 79, 84 (2d Cir. 2009). In doing so, however, the Court draws all "reasonable inferences

from the evidence offered" in plaintiff's favor.  Id. (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

After demonstrating the defendant's liability, the plaintiff must also establish his entitlement to damages to a "reasonable certainty." Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).  In the context of a default judgment brought for violations of the FLSA and the NYLL, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d at 84-84.

II.    Liability

In this case, plaintiff alleges that defendant violated the FLSA and the NYLL by failing to pay minimum wage and overtime wages, sick pay, and wage statements and notices.[2]  Each of these claims is addressed below.

A.    FLSA Claims

To establish a claim under the FLSA, a plaintiff must prove the following:   (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an "employee" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  Edwards v. Community Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing 29 U.S.C. §§ 206(a), 207(a)); see also Tony & Susan Alamo Found. v. Secretary of Lab., 471 U.S. 290, 295 (1985).

---

[2] Plaintiff alleges class claims in connection with his FLSA claims.  (See Compl.).  However, as plaintiff moves for default judgment individually, the Court does not address the class claims.

1.    Employer Subject to FLSA[3]

As to the first requirement, a defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . [whose] annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).  In the Complaint, plaintiff alleges that the corporate defendants are "enterprise[s] engaged in interstate commerce as defined by § 203(r) and (s) of the FLSA." (Compl. ¶¶ 6, 7).  Plaintiff further alleges that, at all relevant times, the corporate defendants had annual gross volume business done in an amount not less than $500,000.  (Id.)  In the context of a default under the FLSA, courts do not require any additional factual allegations to establish enterprise coverage.  See, e.g., Fermin v. Las Delicias Peruanas Rest. Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. Mar. 19, 2015) (finding a complaint which simply restated the statutory definition to be sufficient because it was "reasonable to infer that the myriad goods necessary to operate a . . . restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State").  Thus, taking these allegations as true, the Court finds that plaintiff has established that the two corporate defendants qualify as an employer under the FLSA.

2.    Individual Employer Doctrine

This action was brought against the corporate entities and the individually named defendant Khim.  As for defendant Khim, plaintiff alleges that Khim is the owner of the

---

[3] Although the Motion is for entry of default judgment against individual defendant Khim only, in order to establish that Mr. Khim is subject to the FLSA as owner of the corporate defendants, the Court must evaluate whether the corporate defendants meet the definition of an "employer" under the FLSA.

corporate defendants and "exercised sufficient control over the corporate defendants' day-to-day operations, including, but not limited to, how employees are paid, to be considered an 'employer'" under the FLSA.  (Compl. ¶ 8).

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ."  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  An individual may be liable as an employer under the FLSA so long as he exercises "operational control" over the employee in question.  See Irizarry v. Catsimatidis, 722 F.3d 99, 110 (2d Cir. 2013), and individuals who are found to be "employers" under the FLSA may be held jointly and severally liable to the plaintiff.  Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002); see also Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011).

Based on the allegations in the Complaint regarding defendant Khim, plaintiff has adequately alleged the elements necessary to state a claim against him as an "employer," and thus, the corporate defendants and defendant Khim would be jointly and severally liable for any wage violations.

3.    Employees Within FLSA

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1); Edwards v. Community Enters., Inc., 251 F. Supp. 2d at 1098.  The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce[.]"  29 U.S.C. § 206(a).  In determining whether a plaintiff is an "employee" within this definition, the "ultimate question is . . . 'whether

as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself].'" Velu v. Velocity Exp., Inc., 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (quoting Godoy v. Restaurant Opportunity Ctr. of New York, Inc., 615 F. Supp. 2d 186, 192-93 (S.D.N.Y. 2009)).

Plaintiff alleges in the Complaint that he was employed by the defendants as a sushi chef at KMM.  (Compl. ¶ 5).  Plaintiff also alleges that the individual defendant is the owner of the corporate defendants and exercised control over employees' pay.  (Id. ¶ 8).  Thus, based on the allegations in the Complaint, plaintiff qualifies as an "employee" and Mr. Khim qualifies as his "employer" under the FLSA.  The Court does not find any basis for exempting the employment relationship at issue from coverage under the FLSA.[4]  See 29 U.S.C. § 213(a) (setting forth the exemptions under the FLSA).

4. Wage Claims

Plaintiff's Motion claims damages under the FLSA for unpaid wages and overtime.  (See Pl.'s Mem.[5] at 7-8).  The Court must consider whether these FLSA claims were adequately pleaded.  First, plaintiff alleges that he was not paid at all for the period from April 20, 2024, to August 30, 2024.  (Compl. ¶ 13).  Plaintiff argues that he is entitled to unpaid wages for this period at his regular rate of pay for his hours worked up to 40 in a workweek.  (See Pl.'s Mem. at 8).  Plaintiff alleges he was paid a weekly wage of $1,440 for the weeks he worked six days a

---

[4] The Court notes that the burden of demonstrating that an employee falls within one of these exempted categories rests squarely with the employer.  Chen v. Major League Baseball, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014) (noting that the exemptions are affirmative defenses which an employer must prove).  Since defendant Khim has failed to appear in this action, he has not availed himself of any of the affirmative defenses provided for in the statute.

[5] Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum of Law in Support of His Motion for Default Judgment, dated February 21, 2025 (ECF No. 10).

week (Compl. ¶ 12), which amounts to a rate of $36 an hour, calculated by dividing $1,440 by 40 hours a week.[6]  (Pl.'s Mem. at 8); see also 29 U.S.C. § 207.

Plaintiff is not entitled to unpaid wages at his regular rate under the FLSA, as the "FLSA statute requires payment of minimum wages and overtime wages only, . . ." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013) (citing 29 U.S.C. § 201-19 (2006)); see also Kinkead v. Humana at Home, Inc., 450 F. Supp. 3d 162, 182 (D. Conn. 2020) (holding that the FLSA "does not provide a cause of action" for unpaid wages at a regular rate above the FLSA minimum wage).  In addition, as plaintiff's regular hourly rate of $36 is higher than the FLSA minimum hourly wage of $7.25, plaintiff is not entitled to any unpaid wages under the FLSA, with the exception of the period from April 20, 2024 to August 30, 2024, when he was not paid at all.  29 U.S.C. § 206(a)(1)(C).

Plaintiff alleges that there was a period of time when he was not paid anything at all and he seeks unpaid *minimum* wages under the FLSA in his Complaint for this period of time. (Compl., Prayer for Relief).  Given that plaintiff claims he was not paid at all for this period of time, the Court finds he has stated a claim for a violation of the FLSA's minimum wage provision.

Plaintiff further claims that he is owed overtime wages under the FLSA.  (Pl.'s Mem. at 8).  The FLSA provides that "no employer shall employ any of his [covered] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his

---

[6] Plaintiff alleges that he was paid "$1,200 per week when he worked 5 days, and $1,440 per week when he worked 6 days."  (Compl. ¶ 12).  However, the Complaint also alleges he worked from 6:00 a.m. to 4 p.m. "for 6 days per week."  (Id. ¶ 9).  Given that plaintiff verified in his Declaration that he consistently worked 6 days per week, the Court credits this testimony and applies his stated $1,440 weekly rate and schedule of six days per week to the Court's evaluation of liability and damages.  (ECF No. 10-2 ¶ 11 ("Pl.'s Decl.")).  In addition, the Complaint and plaintiff's Declaration state different daily schedules, but both allege that he worked 10 hours a day.  (Compl. ¶ 10-11; Pl.'s Decl. ¶¶ 12-13).  Given that plaintiff does not speak English fluently (Pl.'s Decl. ¶ 28), the Court does not find this discrepancy material to evaluating defendant's liability or plaintiff's entitlement to damages, given that defendant was on notice of plaintiff's allegation that he worked 10 hours a day.

employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Overtime is calculated at a rate of one and one-half times the employee's regular hourly pay for work performed in excess of 40 hours per week.  Id.  "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013).

In the Complaint, plaintiff alleges that during his employment he worked six days a week for 10 hours a day, which amounts to 60 hours a week, or 20 hours of overtime per week.  (See Compl. ¶¶ 10, 11).  Plaintiff alleges that defendants did not pay overtime wages for hours worked over 40 per week.  (Id. ¶ 14).  These allegations meet the specificity requirements set forth in Lundy.  Thus, plaintiff has stated a claim of overtime violations under the FLSA.

Finally, the statute of limitations under the FLSA is two years, or three years where defendants' violations of the FLSA were willful.  29 U.S.C. § 255(a).  Plaintiff alleges that defendants' violations of the FLSA were willful.  (Compl. ¶ 27).  Moreover, defendants who default are considered to have committed "willful" violations, and the three-year statute of limitations applies.  See Rodriguez v. Queens Convenience Deli Corp., No. 09 CV 1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011).  Crediting plaintiff with a three-year statute of limitations, plaintiff has adequately pled FLSA claims for the duration of his employment, since his claims accrued on September 10, 2022 when he began working, which is after the three-year statute of limitations began on October 24, 2021, three years before plaintiff filed the Complaint. (Compl. ¶ 9).

B.     NYLL Claims

Plaintiff also alleges that defendants violated provisions of the NYLL related to minimum wages and overtime wages, wage notices and wage statements, and sick leave.  (Compl. ¶¶ 35-40, 41-46, 47-54, 55-66).

1.     Coverage

In order to recover under the NYLL, plaintiff must prove that he was an "employee" and that the defendants were "employers" as defined by the statute.  Lauria v. Heffernan, 607 F. Supp. 2d 403, 407-08 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law.  See N.Y. Lab. L. § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  In making these determinations, New York courts focus on the degree of control the alleged employer exercised over the alleged employee, analyzing whether the employee:  "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule."  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 34 (quoting Bynog v. Cipriani Grp., Inc., 1 N.Y.3d 193, 198, 770 N.Y.S.2d 692, 695, 802 N.E.2d 1090, 1095 (2003)).  Any parties found to be employers under the NYLL are jointly and severally liable to plaintiff.  See Tacuri v. Nithun Constr. Co., 14 CV 2908, 2015 WL 790060, at *4-5 (E.D.N.Y. Feb. 24, 2015); Karic v. Major Automotive Cos., 992 F. Supp. 2d 196, 200 (E.D.N.Y. 2014).

As set forth above, plaintiff alleges that during the relevant period of time, defendant Khim was the owner of the corporate defendants, and exercised control over their day-to-day operations, including controlling how employees are paid.  (Compl. ¶ 8).  In addition, plaintiff

12

alleges that defendant Khim was plaintiff's employer within the meaning of "all applicable statutes." (Id.)

Similarly, under the New York Labor Law, an employee is defined as "any individual employed or permitted to work by an employer in any occupation." N.Y. Lab. L. § 651(5). In this case, plaintiff alleges that at all relevant times, he was defendants' employee within the meaning of "all applicable statutes." (Compl. ¶ 5). The allegations set forth in plaintiff's Complaint, as outlined above, clearly establish that plaintiff was an employee of defendant Khim.

Accordingly, based on these uncontested allegations, the Court finds plaintiff has adequately alleged Mr. Khim was his employer and he was an employee under the NYLL.

> 2.    Minimum Wage and Overtime Claims

The NYLL and the FLSA are analytically nearly identical with respect to minimum wage and overtime claims. D'Arpa v. Runway Towing Corp., No. 12 CV 1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013). Like the FLSA, the NYLL establishes certain minimum wage rates and requires that employees be compensated at an overtime rate of one-and-one-half times their regular hourly pay for time worked in excess of 40 hours in a week. See N.Y. Lab. L. § 160; 12 N.Y.C.R.R. § 142-2.2; see also Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003). However, "[u]nlike the FLSA, the NYLL does allow for recovery of unpaid wages at "the agreed-upon rate, even if it exceeds the minimum wage." Shetty v. SG Blocks, Inc., No. 20 CV 550, 2020 WL 3183779, at *5 (E.D.N.Y. June 15, 2020) (quoting Kernes v. Global Structures, LLC, No. 15 CV 659, 2016 WL 880199, at *3 (S.D.N.Y. Mar. 1, 2016)). This claim for unpaid wages at the agreed-upon rate falls under Article 6 of the NYLL. See N.Y. Lab. L. §§ 191(1)(a)(i), 191(1)(d) (stating that workers "shall be paid . . . in accordance with the agreed terms of employment"). Courts that find liability for unpaid wages at the regular rate do

so when the plaintiff specifically alleges a violation of Section 191 or under Article 6 generally. Ferreira v. Brooklyn's Constrs. & Desings Inc., No. 22 CV 3796, 2024 WL 5386542, at *11-12 (E.D.N.Y. Mar. 15, 2024) (finding that plaintiff who brought unpaid wage claim "under Article 6" was entitled to their regular rate for unpaid wages rather than minimum wage); Cavalotti v. Daddyo's BBQ, Inc., No. 15 CV 6469, 2018 WL 5456654, at *12-14 (E.D.N.Y. Sept. 8, 2018) (finding that plaintiff was entitled to unpaid wages at the agreed-upon rate where she alleged a violation of NYLL § 191).

In his Motion, plaintiff requests unpaid wages at his regular rate for the hours worked up to 40 per week during the period in which he alleges he was not paid at all.  (Pl.'s Mem. at 7-8). However, plaintiff's Complaint only alleges NYLL unpaid wage claims for minimum wage and overtime violations.  (See Compl. ¶¶ 35-46).  As to his minimum wage claim, plaintiff alleges in his Complaint that defendants failed to pay him "the prevailing minimum wage for all hours" under NYLL § 650, *et seq*.  (Compl. ¶¶ 1, 37).  Plaintiff does not cite to Section 191 of the NYLL or otherwise refer to this provision anywhere in his Complaint, nor does he invoke Article 6 in the context of his unpaid wage claim.  The prevailing minimum wage under the NYLL during the time plaintiff claims he was totally unpaid was $16 an hour, which is less than plaintiff's regular hourly rate of $36.  See N.Y. Lab. L. § 652.  Since plaintiff alleges that he was not paid anything for certain weeks of work, the Court finds that plaintiff has adequately alleged a violation of the NYLL minimum wage provision, but for the reasons stated above, he has not alleged a violation of the NYLL agreed-upon rate provision.

To the extent plaintiff claims overtime violations for his hours worked over 40 in a week, the Court finds plaintiff has adequately alleged NYLL violations for the same reasons as discussed above regarding those claims under the FLSA.

14

3.    Sick Pay

Plaintiff also alleges a violation of NYLL § 196-b, the sick leave provision.  (Compl. ¶¶ 55-66).  Specifically, plaintiff alleges that defendants were required under the statute to "maintain a policy" regarding paid time off ("PTO") for all employees, and that earned PTO must be paid out to departing employees unless the written policy specifies otherwise.  (Id. ¶¶ 57-58 (citing Glenville Gage Co., Inc. v. Industrial Bd. of Appeals of the State of New York, Dept. of Labor, 70 A.D.2d 283, 421 N.Y.S.2d. 408 (3rd Dep't 1979))).  Plaintiff alleges that defendants' PTO policies required this payout or were silent on the issue, and that defendants did not pay out PTO to plaintiff when he departed from employment.  (Id. ¶¶ 59-60).

However, as plaintiff notes in the Complaint, the amount of PTO a plaintiff is entitled to depends upon the number of employees the employer has in a given calendar year.  N.Y. Lab. L. § 196-b.  For instance, employers with four or fewer employees are only required to provide their employees with *unpaid* sick leave; it is unclear from the statute to what extent such unpaid leave must be paid out to employees.  Id. § 196-b(a).  Plaintiff does not allege the number of employees defendants had during his period of employment nor which sick leave policy he is entitled to under the statute.  Most importantly, plaintiff does not even allege that he accrued unused PTO during his employment that would entitle him to a payout.  Thus, on the face of the pleading, even if defendant Khim were required to provide plaintiff with PTO, plaintiff could have utilized all this PTO and thus defendant would not be in violation of the statute for failing to provide plaintiff a payout at the end of his employment.  While plaintiff's Declaration, submitted with his Motion for default judgment, does provide information on the number of defendants' employees and states that defendants did not provide him with paid sick leave during his employment (Pl.'s Decl. ¶¶ 25-27), this is insufficient.  Plaintiff's Complaint itself must put defendant Khim on notice that plaintiff may have a viable claim for sick leave under the statute

in order to adequately assess his defense, if any, to these claims.  See Fed. R. Civ. P. 54(c)
(providing that a "default judgment must not differ in kind from, or exceed in amount, what is
demanded in the pleadings").

Plaintiff has not provided enough information in his Complaint for the Court to determine
whether and to what extent he is entitled to the NYLL's sick leave provision.  Thus, the Court
respectfully recommends that the district court find that plaintiff has not adequately alleged
defendants' liability under NYLL § 196-b.

4.     Wage Theft Prevention Act Claims

The Wage Theft Prevention Act ("WTPA"), NYLL §§ 195(1) and 195(3), requires that
employers provide employees with notices regarding their wages at the time of their hiring and
wage statements with each payment of wages.  The notice must contain the rate or rates of pay,
whether the employee was to be paid by the hour, shift, day, or week, any allowances claimed as
part of the minimum wage, the regular pay day, the name of the employer, the physical address
of the employer's main office, and the employer's telephone number in both English and the
employee's primary language, if different from English.  Id. § 195(1)(a).  The wage statement
must include "the dates of work covered by that payment of wages; name of employee; name of
employer; address and phone number of employer; rate or rates of pay and basis thereof, whether
paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions;"
and certain allowances.  Id. § 195(3).

The Supreme Court explained in TransUnion LLC v. Ramirez, 594 U.S. 413, 426 (2021),
that "Congress's creation of a statutory prohibition or obligation and a cause of action does not
relieve courts of their responsibility to independently decide whether a plaintiff has suffered a
concrete harm under Article III."  The Supreme Court clarified that "[o]nly those plaintiffs who
have been concretely harmed by a defendant's statutory violation may sue that private defendant

16

over that violation in federal court." Id. at 427. Applying TransUnion to WTPA claims, the

Second Circuit in Guthrie v. Rainbow Fencing Inc. recently declared that in order to bring a

claim under Section 195 of the NYLL, "a plaintiff must show some causal connection between

the lack of accurate notices and the downstream harm." 113 F.4th 300, 308 (2d Cir. 2024).

Thus, after Guthrie, alleging only a statutory violation of the WTPA is insufficient. Plaintiffs

sufficiently allege an injury-in-fact when they claim, for example, that the failure to notify

"prevented the employee from obtaining full payment of wages in a timely fashion." Id. at 309.

Here, plaintiff's Complaint simply alleges that defendants failed to provide wage notices

and wage statements to plaintiff. (Compl. ¶¶ 49, 53). Plaintiff's Complaint does not identify any

specific harm that flowed from defendants' failure to comply with the NYLL. (See id. ¶¶ 47-54).

While plaintiff's Declaration, submitted with his Motion, alleges downstream harm in

connection with these claims (Pl.'s Decl. ¶¶ 19-24), this is insufficient for the reasons stated

above. Fed. R. Civ. P. 54(c)); see also Darwish v. Pompeo, No. 18 CV 1370, 2020 WL 7049436,

at *11 (W.D.N.Y. Aug. 19, 2020) (holding that plaintiff's "statement in a memorandum of law is

insufficient to meet his burden" to plead jurisdictional issue). Plaintiff thus does not have

standing to bring these claims and has not adequately pleaded his notice and wage statement

claims.

III.    Remedy

A.    Default Determination

Based upon a review of the allegations in the Complaint, which are undisputed at this

time, and for the reasons stated herein, the Court finds that plaintiff has sufficiently established

liability to warrant entry of a default judgment for damages for his FLSA and NYLL minimum wage and overtime claims only.[7]

Here, it is beyond dispute that defendant Khim is in default.  Defendant Khim failed to appear and answer or otherwise respond to the Complaint.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[defendant's] default is crystal clear – it does not even oppose this motion [for entry of default judgment]").

Here, defendant's failure to respond to the Complaint warrants the entry of a default judgment.  Given the numerous opportunities afforded to defendant, and his failure to participate in these proceedings, the Court finds no compelling reason to delay further.  Accordingly, it is respectfully recommended that default judgment be entered against defendant Khim.

B.    Damages

1.    Legal Standard

Having determined that plaintiff has established that all defendants are liable for damages flowing from FLSA and NYLL violations, the Court now must determine whether plaintiff has established his damages to a "reasonable certainty."  Gunawan v. Sushi Sake Rest., 897 F. Supp. 2d at 83.  As noted *supra*, when a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986)).  However, the plaintiff must still prove damages in an

---

[7] Should plaintiff wish to pursue his NYLL agreed-upon wage, WTPA, and/or sick leave claims, he may opt to abandon his Motion here and instead file an Amended Complaint properly alleging these claims and serve it upon defendants.  Should defendants default on the Amended Complaint, at that point, plaintiff may file a renewed motion for default judgment.

evidentiary proceeding at which the defendants have the opportunity to contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'"  Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that "[t]he Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(b).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

In this case, defendant Khim has not answered the Complaint or appeared before the Court.  Since defendant is in default, plaintiff's evidence on damages is undisputed.  As an initial matter, plaintiff's Declaration and submissions as to the hours worked and rate of pay received are sufficient bases for this Court to recommend an award of damages, even in the absence of further documentation.

Under the FLSA, an employee-plaintiff generally "has the burden of proving that he performed work for which he was not properly compensated." Santillan v. Henao, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded on other grounds by 29 U.S.C. § 251, et seq.).  The Supreme Court in

Anderson v. Mt. Clemens Pottery Co. noted, however, that "employees seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy." 328 U.S. at 687. By defaulting, defendants have "deprived the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages." Santillan v. Henao, 822 F. Supp. 2d at 294. In default cases, the Supreme Court has held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687), overruled on other grounds, Slayton v. American Express Co., 460 F.3d 216 (2d Cir. 2006).

In light of this holding, courts in this Circuit have held that where a defendant-employer defaults, a plaintiff may meet this burden of proof "by relying on his recollection alone." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005). Otherwise, defendants in FLSA cases would stand to benefit from choosing not to cooperate with discovery or litigation efforts, and "[o]ne should not be permitted to profit by its own wrongful act." Boyke v. Superior Credit Corp., No. 01 CV 0290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28, 2006) (citing 29 U.S.C. § 211(c), which requires that employers "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of employment"); see also Park v. Seoul Broad. Sys. Co., No. 05 CV 8956, 2008 WL 619034, at *7 (S.D.N.Y. Mar. 6, 2008) (holding that courts should apply a "special burden-shifting standard" where employers fail to comply with this statutory duty of record keeping).

New York law also requires that employers keep various, detailed employment records. Like the FLSA, the NYLL requires that employers keep employment records in their course of business relating to employees' rates of pay, hours, dates of work, and payroll, among other information.  See N.Y. Lab. L. § 195(1)(a) (requiring an employer to "provide his or her employees, in writing . . . a notice containing  . . . the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances"); N.Y. Lab. L. § 195(2) (requiring employers to notify employees of any changes in the pay day prior to changing the pay day); N.Y. Lab. L. § 195(3) (employers must "furnish each employee with a statement with every payment of wages, listing . . . the dates of work . . . gross wages; deductions; allowances, if any claimed as part of the minimum wage; and net wages"); N.Y. Lab. L. § 195(4) (requiring employers to "establish, maintain[,] and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee"). Thus, where the defendants have failed to maintain proper records, the burden of proving that plaintiff was paid properly falls on the defendants.  See Marin v. JMP Restoration Corp., No. 09 CV 1384, 2012 WL 4369748, at *6 (E.D.N.Y. Aug. 24, 2012) (explaining that "[t]o determine NYLL overtime damages, courts use the same burden-shifting scheme employed in FLSA actions").

Thus, under both federal and state laws, defendant-employers have an obligation to keep records, and by virtue of defendants' default, plaintiff's "recollection and estimates of hours worked are presumed to be correct."  Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004); accord Chao v. Vidtape, 196 F. Supp. 2d 281, 293-94 (E.D.N.Y. 2002).  Courts have applied this same presumption of correctness to a plaintiff's recollection of wages earned.  See, e.g., Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 84.

Here, because defendant Khim did not meet his obligation to provide plaintiff with records, the only evidence offered to support plaintiff's claim that he was paid less than he was entitled to under the law is based on plaintiff's statements.  Given that the defendant has not appeared in this action to challenge plaintiff's claims, the Court finds plaintiff's evidence as to hours worked and wages paid credible, and bases its recommendation on plaintiff's recollection.

### 1.    Unpaid Wages

Plaintiff Park alleges violations of the FLSA and NYLL based on defendants' failure to pay any wages at all from the period of April 20, 2024 through August 30, 2024, and based on defendants' failure to pay overtime wages for the entire period of his employment.  (See generally Compl.; Pl.'s Mem. at 8).  In his request for default judgment, plaintiff seeks a total of $27,360 in unpaid regular wages and $111,240 in unpaid overtime wages.  (See Pl.'s Mem. at 8; Dmgs. Chart[8]).

While a defendant's failure to pay minimum wages and overtime violates both the FLSA and the NYLL, a plaintiff may only recover damages under one statute, as "double recovery of the same wages and related damages is not permitted."  Gonzales v. Gan Israel Pre-Sch., No. 12 CV 6304, 2014 WL 1011070, at *11 (E.D.N.Y. Mar. 14, 2014).  Courts will thus award damages under whichever statute would allow for greater recovery.[9]  Id.

Under both the FLSA and NYLL, an employee is entitled to overtime pay for hours worked in excess of 40 hours in one work week.  See 29 U.S.C. § 207(a)(2)(C); N.Y. Lab. L. § 232; 12 N.Y.C.R.R. § 146-1.4.  The method for calculating overtime under both the FLSA and

---

[8] Citations to "Dmgs. Chart" refer to plaintiff's damages calculations chart submitted as an exhibit to his supplemental letter in support of his Motion for default judgment, filed on June 6, 2025 (ECF No. 11-1).

[9] Given that the minimum wage rates under the NYLL were uniformly higher than the federal minimum wage rate of $7.25 in effect during the period of plaintiff's employment, the Court is recommending an award under the NYLL because it provides for a greater degree of recovery.

NYLL is the same.  Although plaintiff was not paid overtime in violation of both the FLSA and the New York Labor Law, he is not entitled to recover double damages under both the FLSA and the NYLL.  See Janus v. Regalis Constr., Inc., 11 CV 5788, 2012 WL 3878113, at *7 (E.D.N.Y. July 23, 2012), report and recommendation adopted, 11 CV 5788, 2012 WL 3877963 (E.D.N.Y. Sept. 4, 2012).

The FLSA states that overtime pay should be calculated based on one and a half times the employee's regular rate of pay or the minimum wage, whichever is greater.  See 29 U.S.C. § 207; 29 C.F.R. § 778.107.  New York law also requires that employees be compensated at "one and one-half times the employer's regular rate of pay" and provides that the regular rate should be calculated "in the manner and methods provided in" the FLSA.  12 N.Y.C.R.R. § 142-2.2. The Code of Federal Regulations explains that the term "regular rate of pay" should be interpreted to mean the higher of the employee's hourly rate and minimum wage under either state or federal law:  "Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 must be construed to mean the regular rate at which he is lawfully employed."  29 C.F.R. § 778.5; see Santana v. Latino Express Rests., Inc., No. 15 CV 4934, 2016 WL 4059250, at *4 (S.D.N.Y. July 28, 2016) (calculating overtime wages due to plaintiff under both the FLSA and NYLL by using the state minimum wage rate:  "During Plaintiff's employment at the Restaurant, the New York minimum wage rate was $8.75 per hour.  Plaintiff's overtime rate was one and one-half times her normal wage rate of $8.75, or $13.125"); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d at 126 (holding that "[u]npaid overtime wages are calculated by

multiplying the New York minimum wage rate or the FLSA minimum wage rate, whichever is higher, by 0.5 to determine the additional amount owed per hour over 40 hours worked").

a)  Unpaid Wages from April 20, 2024 through August 30, 2024

Plaintiff alleges that he was not paid at all for the period from April 20, 2024 through August 30, 2024, and that he is entitled to unpaid straight time and unpaid overtime for this period.  (Compl. ¶ 13; Pl.'s Decl. ¶ 14; Dmgs. Chart).  Plaintiff argues that he is entitled to $27,360 in unpaid wages for the hours worked up to 40 hours a week during this time period. (Pl.'s Decl. ¶ 14; Pl.'s Mem. at 8).  Plaintiff appears to calculate this number by multiplying the 19 weeks he worked during this time period by his alleged weekly regular rate of pay, or $1,440. (See Dmgs. Chart).  In addition, plaintiff argues that he is owed overtime during this period for the 20 hours he worked over 40 hours each week.  Plaintiff calculates his overtime rate by taking his alleged weekly regular rate, $1,440, and dividing it by 40 hours a week for an hourly rate of $36, then multiplying that $36 rate by one and a half for an hourly overtime rate of $54.  (Pl.'s Mem. at 8).

However, as explained *supra*, plaintiff did not adequately allege under NYLL § 191 that he is entitled to the rate of pay agreed upon with his employer.  Thus, as to his unpaid straight time wages for hours worked up to 40 in a workweek, plaintiff is entitled to the NYLL minimum wage.  The NYLL minimum wage for New York City during the time period in which plaintiff was not paid at all was $16 an hour.  N.Y. Lab. L. § 652(1-a)(a) (stating that the minimum wage in New York City starting on January 1, 2024 and ending December 31, 2024 was $16 an hour).  Thus, plaintiff is entitled to $16 an hour for 40 hours a week, or $640 per week, multiplied by the 19 weeks he alleges defendants did not pay him at all, which amounts to $12,160 total.

As to plaintiff's overtime during this period, plaintiff is similarly not entitled to an overtime calculation based on the rate he alleges was agreed upon with his employer.  Under the

New York Hospitality Industry Wage Order, an overtime rate based on an employee's "regular rate" of pay is calculated by "dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week" and then multiplying that number by one and a half. See 12 N.Y.C.R.R. §§ 146-3.5(b), 1.4. Given that plaintiff alleges he had no weekly earnings for this period of time, and absent an allegation that plaintiff is entitled to his agreed-upon rate under NYLL § 191, there is no basis for the Court to calculate plaintiff's overtime for this period based on his alleged $1,440 weekly rate. However, plaintiff is at least entitled to overtime wages based on the NYLL minimum wage rate, representing $16 multiplied by one and a half, for an hourly overtime rate of $24. According to plaintiff Park's Declaration, he worked a total of 10 hours a day, times six days a week for a total of 60 hours worked per week in total. (Pl.'s Decl. ¶¶ 11, 13). Thus, since plaintiff alleges he worked 20 hours of overtime per week for this 19-week period, plaintiff is entitled to $9,120 in overtime wages for this period, calculated by multiplying the $24 hourly overtime rate times 20 hours a week times 19 weeks.

Accepting plaintiff Park's unchallenged representations as to the hours he worked and the pay received during this time period, the Court finds that plaintiff is owed $21,280 in unpaid wages for the time period between April 20, 2024 and August 30, 2024, representing $12,160 in minimum wages and $9,120 in overtime wages. The Court respectfully recommends that plaintiff be awarded $21,280 in unpaid wages for this time period.

b) Unpaid Overtime Wages from September 10, 2022 through April 19, 2024

From the first day of plaintiff's employment, September 10, 2022, through April 19, 2024, plaintiff alleges that he was not paid overtime for the hours he worked in excess of 40 hours a week. (See Compl. ¶ 14; Pl.'s Decl. ¶ 15; Dmgs. Chart). As explained *supra*, during this

time period, plaintiff alleges he was actually paid $1,440 a week working six days a week.  (See Compl. ¶ 12; Pl.'s Decl. ¶¶ 10, 13, 15; Dmgs. Chart).[10]  Under the New York Hospitality Industry Wage Order, given that plaintiff was paid $1,440 weekly during this time period, plaintiff's regular rate of pay is calculated by dividing $1,440 by 40 hours of work, producing a regular rate of $36 an hour.  12 N.Y.C.R.R. §§ 146-3.5(b); (Pl.'s Mem. at 8).  Since the minimum wage rates under both the NYLL and FLSA were always less than plaintiff's regular rate of pay for this period, the Court respectfully recommends that he be awarded overtime pay based on his regular rate of pay.  Thus, plaintiff's overtime rate of pay of $54 per hour is based on one and a half times the $36 per hour rate that he received throughout the period.

During this period, as with the period between April 20, 2024 through August 30, 2024, plaintiff alleges he worked 60 hours a week, amounting to 20 overtime hours a week.  (Pl.'s Decl. ¶ 13).  Thus, he is entitled to receive overtime pay for 20 hours per week calculated at the rate of $54 per hour.  This results in an award of overtime pay of $1,080 per week owed to plaintiff.  Thus, plaintiff is entitled to $90,720 in overtime wages during this period, representing $1,080 per week for each of the 84 weeks worked between September 10, 2022, and April 19, 2024.

Thus, accepting plaintiff Park's unchallenged representations as to the hours he worked and the pay received, the Court finds that plaintiff is owed $90,720 in unpaid overtime pay for this time period, and the Court respectfully recommends that plaintiff be awarded $90,720 in overtime wages worked from September 10, 2022, through April 19, 2024.

---

[10] See supra n.6.

2.    Liquidated Damages Under the FLSA and NYLL

The FLSA and NYLL provide for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments.  29 U.S.C. § 216(b); N.Y. Lab. L. §§ 198(1-a) and 663(1).  Prior to November 24, 2009, an employee could recover liquidated damages under the NYLL only if the underpayment was found to be willful.  N.Y. Lab. L. § 663(1) (1967).  However, an amendment to the NYLL, effective November 24, 2009, "incorporated the federal standard" and shifted the burden of proving good faith to the employer. Hengjin Sun v. China 1221, Inc., No. 12 CV 7135, 2016 WL 1587242, at *3 (S.D.N.Y. Apr. 19, 2016) (quoting Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014)).  Under both statutes, the employer bears the burden of proving good faith and reasonableness.  Under the NYLL's liquidated damages provision, "courts have not substantively distinguished the federal standard from the current state standard of good faith." Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (citing He v. Home on 8th Corp., No. 09 CV 5630, 2014 WL 3974670, at *7 n.19 (S.D.N.Y. Aug. 13, 2014)); Eschmann v. White Plains Crane Serv., Inc., No. 11 CV 5881, 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014).  Accordingly, the employer's burden of proving good faith "is a difficult one, with double damages being the norm and single damages the exception." Gortat v. Capala Bros., 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999), and awarding 100% liquidated damages under the FLSA standard).

Since the defendant has chosen not to appear in this action and has not established that he had a good faith basis to believe that his underpayment of wages was in compliance with the NYLL or the FLSA, the Court respectfully recommends that plaintiff be awarded liquidated damages in an amount equal to the amount of unpaid wages under the NYLL.

Accordingly, given that the Court recommends that plaintiff be awarded a total of $112,000 in unpaid wages, representing $99,840 in total overtime wages and $12,160 in minimum wages, the Court respectfully recommends that plaintiff be awarded the equal amount of $112,000 in liquidated damages for his minimum wage and overtime claims.

        3.     <u>Pre- and Post-judgment Interest</u>

Finally, plaintiff's Complaint contains a request for an award of pre- and post-judgment interest (Compl., Prayer for Relief), and plaintiff asserts in his Memorandum of Law that he is "entitled to pre-judgment interest on his unpaid wage claim under the NYLL," as well as post-judgment interest under 28 U.S.C. § 1961.  (Pl.'s Mem. at 17-18)  Plaintiff asserts a reasonable midpoint for calculating prejudgment interest under the NYLL as September 5, 2023, or the midpoint of his employment.  (<u>Id.</u> at 18)  Based on plaintiff's own calculations of damages incurred by that period, plaintiff requests that prejudgment interest be calculated by $138,600, representing the total wages owed, multiplied by nine percent and divided by 365 for a daily interest rate of $34.18, multiplied by 535 days from the midpoint to the filing date of the Motion, for a total of $18,283.81.  (<u>Id.</u>; Dmgs. Chart).

Prejudgment interest is not available under the FLSA because the federal statute does not allow an employee to recover "prejudgment interest on any portion of their recovery for which they have been awarded federal liquidated damages," since liquidated damages under the FLSA "are considered compensatory in nature and thus serve as a form of pre-judgment interest." <u>Yuquilema v. Manhattan's Hero Corp.</u>, No. 13 CV 461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014) (citations and quotation marks omitted), <u>report and recommendation adopted</u>, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014); <u>Yu G Ke v. Saigon Grill, Inc.</u>, 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008)  However, the Second Circuit has held that, as liquidated damages and prejudgment interest are not functional equivalents under the NYLL, prevailing plaintiffs

may recover both for claims brought under the NYLL.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).  In this case, since the Court did not award plaintiff damages based on his FLSA claims, there is no impediment to awarding liquidated damages and pre-judgment interest on plaintiff's NYLL claims.  However, prejudgment interest is available only on a plaintiff's actual damages, not on liquidated damages.  See Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017).

Prejudgment interest under New York Law is governed by Section 5001 of the New York Civil Practice Law and Rules, which states:  "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred."  N.Y. C.P.L.R. § 5001(b).  In addition, "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  Id.  However, where, as here, violations of the NYLL occur over an extended period of time, courts calculate prejudgment interest from a "single reasonable intermediate date."  Id.  See, e.g., Wicaksono v. XYV 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *9 (S.D.N.Y. May 2, 2011) (holding that, "[t]he plaintiffs have calculated prejudgment interest from the midway point of each plaintiff's employment, which is a reasonable approach").

In determining prejudgment interest, "[c]ourts have discretion in choosing a reasonable date from which to calculate" it.  Ladino v. Cordova, No. 21 CV 2449, 2024 WL 968898 at *4 (E.D.N.Y. Feb. 14, 2024), report and recommendation adopted, 2024 WL 967635 (E.D.N.Y. Mar. 6, 2024).  In this district, courts most often select a "median date between the earliest ascertainable date the cause of the action existed and the date the action was filed" from which to

calculate prejudgment interest.  Id. (quoting Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 93).  However, courts have also held as reasonable a midpoint based upon the period of employment subject to the NYLL claim.  See, e.g., Thompson v. Hyun Suk Park, 18 CV 6, 2020 WL 5822455, at *11 (E.D.N.Y. Sep. 1, 2020) (calculating the midpoint between plaintiff's start and end dates, which represented "the period in which the NYLL claim accrued"); Rosas v. M and M LA Solucion Flat Fixed Inc., 23 CV 1212, 2024 WL 4131905, at *17 (E.D.N.Y. Sep. 10, 2024) (calculating midpoint between date NYLL claims first accrued and end date of employment).

Plaintiff calculates prejudgment interest based on the latter approach.  Assuming that the beginning of plaintiff's claim period is September 10, 2022 and the end date of his employment was August 30, 2024, then the mid-date would be September 5, 2023, as plaintiff suggests in his Motion.  (Pl.'s Mem. at 18).  The Court finds that this midpoint provided by plaintiff is reasonable and thus uses such date for the calculation.  Given that the recommended damages award for plaintiff's NYLL wage claims is $112,000, plaintiff would be entitled to recover the total amount, $112,000, multiplied by a rate of nine percent annually resulting in approximately $10,080 per year in interest, or $27.62 per day based on 365 days per calendar year.  As of today, plaintiff would therefore be entitled to $19,720.68 in prejudgment interest based on 714 days between September 5, 2023 and the date of this Report and Recommendation, August 19, 2025.

Accordingly, the Court recommends that prejudgment interest be awarded by the Clerk of Court in a daily amount of $27.62 from September 5, 2023, until the date when the judgment is entered.

Plaintiff is also entitled to post-judgment interest pursuant to 28 U.S.C. § 1961(a), which "ensures that an award of post-judgment interest is mandatory in any civil case where money

damages are recovered." Jimenez v. Green Olive Inc., No. 23 CV 8805, 2024 WL 3763467, at

*22 (E.D.N.Y. Aug. 13, 2024) (awarding post-judgment interest in FLSA and NYLL wage-and-

hour case) (quoting Duffy v. Oyster Bay Indus., Inc., No. 10 CV 3205, 2011 WL 2259798, at *3

(E.D.N.Y. Mar. 29, 2011), report and recommendation adopted, 2011 WL 2259749 (E.D.N.Y.

June 2, 2011)).  Thus, the Court recommends that post-judgment interest be awarded from the

date the Clerk of Court enters judgment until the judgment is paid in full.

      C.    Attorney's Fees and Costs

Plaintiff also seeks to recover an award of attorney's fees and costs in the amount of

$7,107.00, representing 20.40 hours of work billed, plus $581.52 in costs.  (See Pl.'s Mem. at

30-31; Ex. 4).[11]  Plaintiff seeks an hourly rate of $550 for Ryan J. Kim, the primary attorney on

the case; $350 an hour for associate Min Suk Choi; and $215 an hour for paralegal Jia Choi.

(Pl.'s Mem. at 22).  Pursuant to the applicable provisions of the FLSA and the NYLL, 29 U.S.C.

§ 216(b); N.Y. Lab. L. § 663(1), plaintiff is entitled to an award of reasonable attorney's fees and

costs.

      1.    Prevailing Party

The FLSA is a fee shifting statute and the Court "must" award a reasonable attorney's fee

to a prevailing party in an FLSA action.  Khalil v. Original Old Homestead Rest., Inc., 657 F.

Supp. 2d 470, 473 (S.D.N.Y. 2009) (quoting 29 U.S.C. § 216(b) (providing that the court in an

FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a

reasonable attorney's fee to be paid by the defendant, and costs of the action") (emphasis

supplied)); see also Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2012 WL 3878144,

---

[11] In one section of the memorandum, plaintiff states this request as totaling $6,990 for 18.80 hours of
work.  (Pl.'s Mem. at 30).  Given that the memorandum and billing records otherwise show the $7,107 and 20.40
numbers, the Court assumes this is an error.

at *1 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 Fed. App'x 1, 3 (2d Cir. 2013).  Similarly, the NYLL provides for an award of reasonable attorney's fees when the employee prevails on a wage claim. N.Y. Lab. L. § 663(1).  Section 663 provides that successful employees are entitled to "recover in a civil action the amount of any such underpayments, together with costs[,] all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules . . ."  Id.

Plaintiffs are prevailing parties under the FLSA and the NYLL "'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"  Khalil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d at 474 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see Koster v. Perales, 903 F.2d 131, 134 (2d Cir. 1990) (holding that "[a] plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the complaint").

Here, because defendant has defaulted, plaintiff is a prevailing party and therefore should receive an award of reasonable attorney's fees and costs.

### 2.    Calculation of Reasonable Attorney's Fees

#### c)    Legal Standard

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee."  Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report and recommendation adopted by 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the

lodestar "as a starting point"); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." <u>Moore v. Diversified Collection Servs., Inc.</u>, No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013), <u>report and recommendation adopted by</u> 2013 WL 1622713 (Apr. 15, 2013); <u>see also</u> <u>Adusumelli v. Steiner</u>, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate") (citing <u>Millea v. Metro-North R.R., Co.</u>, 658 F.3d at 166); <u>Dunn v. Advanced Credit Recovery, Inc.</u>, 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'"  <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d at 167 (quoting <u>Perdue v. Kenny A.</u>, 130 S. Ct. at 1673).  Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'"  <u>Id.</u> (quoting <u>Perdue v. Kenny A.</u>, 130 S. Ct. at 1673); <u>see also</u> <u>Adusumelli v. Steiner</u>, 2013 WL 1285260, at *2.  In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors."  <u>Id.</u>  As the court explained in <u>Dunn v. Advanced Credit Recovery, Inc.</u>, a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [<u>Johnson v. Georgia Highway Express, Inc.</u>] factors to reflect consideration of any special circumstances."  2012 WL 676350, at *5, n.6.

33

d)  <u>Analysis</u>

In this case, plaintiff was represented by Ryan Kim, who graduated from George Washington University National Law Center in 2002 and received a Tax LLM from Northwestern Pritzker School of Law in 2003.  (Pl.'s Mem. at 22).[12]  According to Mr. Kim, he has over twenty-three years of experience litigating wage and hour actions, and he is fluent in Korean.  (<u>Id.</u> at 23, 26).  Plaintiff was also represented by associate Min Suk Choi, who is fluent in Korean, and was assisted by paralegal Jia Choi, who has worked for Mr. Kim's firm, Ryan Kim Law P.C., for over 12 years, and is also fluent in Korean.  (<u>Id.</u> at 28).

In accordance with <u>New York State Assoc. for Retarded Children, Inc. v. Carey</u>, the Firm submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which the services were charged, along with the name of the attorney, law clerk, or paralegal, and a description of services performed.  711 F.2d 1136, 1148 (2d Cir. 1983).  (<u>See</u> Kim Decl., Ex. 4).

1)  <u>Hourly Rates</u>

In order to calculate the lodestar, the Court must first determine a reasonable hourly rate for the legal services performed.  <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d at 190.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate . . ."  <u>Id.</u> at 186 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. at 433 (1983)).  Additionally, the Second Circuit has adopted the following factors, inter alia, to guide the inquiry as to what constitutes a reasonable hourly rate:

---

[12] Mr. Kim's Declaration does not provide information regarding his professional experience or his request for attorney's fees.  (<u>See</u> ECF No. 10-3 ("Kim Decl.")).

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186 n.3 (citing Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)).  A number of recent cases have considered these factors when awarding attorneys' fees.  See Lisnitzer v. Shah, No. 11 CV 4641, 2022 WL 3931388, at *2 (E.D.N.Y. July 6, 2022), report and recommendation adopted sub nom. Lisnitzer v. Zucker, 2022 WL 3914964 (E.D.N.Y. Aug. 31, 2022), amended by 2023 WL 2020963 (E.D.N.Y. Feb. 15, 2023) (adjusting award by 62 cents); see also Smith v. City of New York, No. 19 CV 6198, 2022 WL 939711, at *4 n.3 (E.D.N.Y. Mar. 28, 2022).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . ., the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . ., and other returns (such as reputation, etc.) the attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184.

In determining the appropriate rate to be charged, the Second Circuit has indicated that courts may consider evidence of prevailing rates for similar services beyond the fee application itself.  See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989).  In addition to the parties' evidentiary submissions, the Court may consider its own

experience and familiarity with the case and with rates generally charged.  See Cruz v. Local Union No. 3, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'") (quoting Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994)).  The Court may also "look to fees awarded in recent FLSA and NYLL cases in the Eastern District of New York in order to determine whether the fees requested are reasonable."  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d at 52. Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'"  Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

First, plaintiff's primary counsel, Mr. Kim, seeks fees for his own services, which he charges at the rate of $550 per hour.  (Pl.'s Mem. at 23).  In support of this billing rate, plaintiff represents that this rate reflects the prevailing market rates for attorneys with similar experience and expertise "in the Southern District of New York."  (Id.)  Plaintiff cites to several cases in which Mr. Kim prosecuted individual wage and hour and collective actions in the Northern District of Illinois, the Southern District of New York, and in this district.  (Id. at 24-25). Plaintiff also argues that, since plaintiff speaks only Korean, without Mr. Kim's fluency, plaintiff would have faced significant challenges to asserting his rights, which entitles him to a higher

rate. (Id. at 27 (citing Nguyen v. Kijakazi, No. 20 CV 2391, 2023 WL 4096695 (S.D. Cal. June 20, 2023))).

However, $550 is higher than the upper range of a reasonable hourly rate in this district. See Doe v. Gonzalez, 21 CV 4580, 2024 WL 2795216, at *2 (E.D.N.Y. May 21, 2024) (noting that Rudler v. Houslanger & Assocs., PLLC, No. 18 CV 7068, 2020 WL 473619, at *2 (E.D.N.Y. Jan 29, 2020) found that the "prevailing rates for attorneys in the E.D.N.Y. . . . . are approximately $300-$450 per hour for partners"); see also Windward Bora LLC v. Montour, No. 23 CV 3654, 2024 WL 4045989, at *4 (E.D.N.Y. Aug. 30, 2024) (quoting the same), report and recommendation adopted, 2024 WL 4242208 (E.D.N.Y. Sept. 19, 2024).  In reviewing recent decisions in this district, the Court could not find a single instance of a court awarding an hourly rate of $550 or higher for wage and hour cases, and counsel's main support for this rate comes from a case outside this Circuit that allowed for a higher award based on fluency in another language.[13]  This is not enough for the Court to conclude that this rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. at 895 n.11.  In addition, Mr. Kim is often awarded an hourly rate of $450.00 for similar work in this district, given that he is an "experienced litigator."  See Choi v. AHC Med. Servs., PLLC, No. 22 CV 1450, 2023 WL 5612394, at *11 (E.D.N.Y. Aug. 1, 2023), report and recommendation adopted, No. 22 CV 1450, 2023 WL 5613718 (E.D.N.Y. Aug. 30, 2023); see also Shin v. Party Well Rest & Oriental Bakery Inc., No. 20 CV 1319, 2024 WL 1327420, at *3 (E.D.N.Y. Mar. 28, 2024) (awarding Mr. Kim $450 an hour and collecting cases awarding the same), aff'd sub nom. Shin v. Party Well

---

[13] It is worth noting that, in that case, the court found that plaintiff's counsel was entitled to a maximum rate of $284.95 an hour even with the additional award for fluency, representing a lower rate than that requested here.  See Nguyen v. Kijakazi, 2023 WL 4096695, at *8).

Rest. & Oriental Bakery, Inc., No. 24-1189, 2025 WL 783737 (2d Cir. Mar. 12, 2025).  Thus, the

Court respectfully recommends that Mr. Kim be awarded an hourly fee of $450.00 for his work

on the instant case.

Plaintiff also requests a rate of $215 an hour for paralegal Jia Choi.  (Pl.'s Mem. at 22).

Courts in this district "have recently awarded hourly rates ranging from . . . $70 to $100 for legal

support staff in FLSA cases."  Diaz v. Rene French Cleaners, Inc., No. 20 CV 3848, 2022 WL

4646866, at *13 (E.D.N.Y. Aug. 29, 2022) (quotation marks and citation omitted), report and

recommendation adopted, No. 20 CV 3848, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022); see

Sanchez v. Mo Grill Corp., No. 23 CV 8290, 2025 WL 1309603, at *8 (E.D.N.Y. Jan. 13, 2025)

(quoting the same).  Given that plaintiff represents that Ms. Choi has worked as a paralegal for

over 12 years and is fluent in Korean, the Court recommends that Ms. Choi be awarded an

hourly rate of $100, representing the "top end for experienced paralegals in labor and

employment matters . . . ."  Shin v. Party Well Rest & Oriental Bakery Inc., 2024 WL 1327420,

at *4 (awarding Ms. Choi $100 an hour for her paralegal work in a wage and hour case); Choi v.

AHC Med. Servs., PLLC, 2023 WL 5612394, at *12 (recommending Ms. Choi be awarded the

same).

As to associate Min Suk Choi, plaintiff requests an award of $350 an hour.  (Pl.'s Mem.

at 28).  Courts in this district "have recently awarded hourly rates ranging from . . . $200 to $325

for senior associates, [and] $100 to $200 for junior associates . . . in FLSA cases."  Diaz v. Rene

French Cleaners, Inc., 2022 WL 4646866, at *13.  Plaintiff has not provided any detail on Mr.

Choi's professional expertise, such as where he graduated from law school or how long he has

been practicing labor and employment law.  Thus, it is difficult for the Court to determine a

reasonable hourly rate for Mr. Choi.  Since plaintiff has also not provided any information as to

whether Mr. Choi is a junior or senior associate, the Court recommends that his fee be set toward the higher end of the junior associate rate, given that the Court found an award of $100 an hour appropriate for the firm's paralegal, and Mr. Choi is an associate at the same firm who is also fluent in Korean. The Court therefore respectfully recommends that Mr. Choi be awarded an hourly rate of $150 an hour, unless plaintiff wishes to supplement his application with more information as to this associate.

### 2) Hours Billed

Turning to the number of hours billed, plaintiff represents that the firm spent a total of 20.40 hours on this matter, as indicated by the billing records. (Pl.'s Mem. at 30; Kim Decl., Ex. 4).

To determine the reasonableness of an attorney's fees request, "[t]he Court must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'" Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994), report and recommendation adopted, (S.D.N.Y. Aug. 9, 2012). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)). In this Circuit, judges are required to "'use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 208 (E.D.N.Y. Nov. 30, 2007) (quoting Fox Indus., Inc. v. Gurovich, No. 03 CV 5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)).

In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 433-35, 440); see also Rotella v. Board of Educ., No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau City Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); Perdue v. City Univ. of N.Y., 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Similarly, courts routinely apply across-the-board reductions for vague entries, see, e.g., In re Olson, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (reducing fees based on lack of specificity in description of work performed); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing fee request by 40% for, inter alia, insufficient descriptions of work performed), rev'd & remanded on other grounds, 38 F.3d 651 (2d Cir. 1994); Cabrera v. Fischler, 814 F. Supp. 269, 290 (2d Cir. 1994) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), rev'd in part & remanded on other grounds, 24 F.3d 372 (2d Cir.), cert. denied, 513 U.S. 876 (1994); Nu-Life Constr. Corp. v. Board of Educ., 795 F. Supp. 602, 607-08 (E.D.N.Y. 1992) (reducing fees by 30% due in part to lack of specificity in descriptions of work performed); Meriwether v. Coughlin, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (finding an overall reduction of 15% warranted based on vague descriptions of work performed).

For a simple default, generally, the "high-end amount of hours spent on eases [sic] in a similar procedural posture (*i.e.*, a motion for default judgment immediately following the filing of a complaint) is no more than 55 hours total." Maldonado v. La Nueva Rampa, Inc., 2012 WL 1669341, at *14 (collecting cases from the Second Circuit in which courts approved the number of hours spent on default judgment cases in similar "wage-and-hour cases" as requested if less than 55, and reduced the number of hours, if greater).

Here, having reviewed the billing records and the tasks completed and given that the firm spent only 20.40 hours on the matter, the Court finds the number of hours to be reasonable.

Having found the number of hours spent on the matter to be reasonable, the Court respectfully recommends that plaintiff's counsel receive $4,200 in attorney's fees, based on 5.1 hours worked by Mr. Kim at $450 an hour ($2,295), 7.5 hours worked by Mr. Choi at $150 an hour ($1,125), and 7.8 hours worked by paralegal Choi at $100 an hour ($780).  (See Kim Decl., Ex. 4).

       3.    Reasonable Costs

Plaintiff also requests $581.42 in costs and disbursements, including $405 for filing fees, $166.42 spent on process fees, and $10 spent on a skip tracing service.  (Kim Decl., Ex. 4).

Given that the firm has provided billing records detailing how these costs were incurred, the Court recommends that plaintiff be awarded the full $581.42 requested in costs.  See Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 290-91 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees, service of process, legal research, and postage); see also Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 374 (S.D.N.Y. 2005) (citing Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2d Cir. 1987) (explaining that "[i]dentifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable . . . and are often distinguished

from nonrecoverable routine office overhead, which must be absorbed within the attorney's hourly rate")).

Accordingly, the Court respectfully recommends that plaintiff be awarded $4,200 in attorney's fees, plus an additional $581.42 in costs, totaling $4,781.42.

<u>CONCLUSION</u>

The Court respectfully recommends that plaintiff's motion for entry of a default judgment be granted, and that plaintiff be awarded the following damages: (1) $112,000 for unpaid wages under the NYLL; (2) $112,000 in liquidated damages; (3) $27.62 per day in prejudgment interest, starting on September 5, 2023, until final judgment is entered; (4) post-judgment interest until the judgment is paid in full; and (5) $4,781.42 in attorney's fees and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the district court's order. <u>See, e.g.</u>, <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

Plaintiff shall serve a copy of this Report and Recommendation on the defendant and file proof of such service on the record by **<u>August 22, 2025</u>**.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 19, 2025

                                        /s/ Cheryl L. Pollak
                                        _____
                                        Cheryl L. Pollak
                                        United States Magistrate Judge

42

_____
Eastern District of New York